KOCHTITZKY et al. v. JOHN A. DENIE'S SONS CO.

No. 10087.

Circuit Court of Appeals, Sixth Circuit.

Feb. 25, 1946.

Wm. M. Hall, of Memphis, Tenn., for appellants.

J. S. Allen, of Memphis, Tenn. (J. S. Allen and J. E. McCadden, both of Memphis, Tenn., of counsel; Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, Tenn., on the brief), for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

PER CURIAM.

The appellant partnership, Kochtitzky and Johnson, instituted in the district court a civil action for declaratory judgment on the obligations of the appellee, John A. Denie's Sons Company, under a contract between the parties, dated April 20, 1943, covering the sale of sand and gravel.

After a full hearing upon the testimony of witnesses introduced by the parties to the controversy, the district court filed comprehensive findings of fact, brief conclusions of law, and final judgment appropriate to the findings and conclusions. The findings of fact by the district court are based upon substantial evidence and are not clearly erroneous. Therefore, these findings must be accepted here.

The contract in controversy between appellants, who owned large deposits of sand and gravel near Olive Branch, Mississippi, and the appellee corporation with its situs at Memphis, Tennessee, distributors of building material and the like, provided for a minimum purchase by the distributors of 50,000 tons of gravel and for an unspecified quantity of sand, produced in the processing of the gravel. The contract required that the gravel meet United States Engineers' specifications for "one size aggregate" in the stockpile at the plant of appellants near Olive Branch, Mississippi; and allowed the appellee sixty days from its date "before demanding material." If material should be produced prior to sixty days, however, appellants agreed to furnish such quantities as should be requested by the appellee.

Appellee agreed to pay one dollar per ton for gravel loaded and weighed in cars or trucks at the plant of appellants, to pay all bills monthly, and to pay fifty percent of the contract price on all gravel put into the stockpile. It was provided that "the balance will be paid as the gravel is sold" by the distributors. The appellants agreed to load and weigh the gravel, as requested by the appellee. The contract recited that no railroad tracks were available at the time of its execution, but that appellants were contemplating their installation. It was agreed that sand would be purchased at fifty cents per ton, on the same basis as the gravel; and that, in the event the appellee should receive an order in excess of 50,000 tons of gravel, the first 50,000 tons thereof and at least seventy-five percent of the excess would be tendered appellants.

The following important provision was included as the seventh numbered paragraph of the contract, evidenced in writing:

"Kochtitzky & Johnson agree to stockpile the above described gravel on their property and agree that all expenses of storage, rent, etc. will be paid by them. John A. Denie's Sons Co. agrees to dispose of this material as rapidly as possible but no time limit can be set as to its ultimate disposal as this can only be governed by the demand."

The contract further provided that the appellee was appointed exclusive sales agent of the appellants for all materials produced at their Olive Branch Plant for a period of one year and sixty days; and that such product should be marketed through appellee, subject to the conditions stated, as follows: (1) Appellants would stockpile the first 50,000 tons of gravel produced for the appellee; (2) the exclusive sales territory would be confined within a forty-mile radius of Shelby County, Tennessee, in which the City of Memphis is located; (3) the appellants reserved the right to market their own material, "after having put 50,000 tons of gravel in stockpile" for appellee; provided, however, that any tonnage sold by appellant in which the appellee did not participate would be applied, at the latter's option, against its obligation to purchase the 50,000 tons of gravel.

Without detailing all the findings of fact of the district court, it should suffice to say that the contract in question was made in contemplation of the construction of governmental projects which failed to materialize, and also of the circumstances which would confront the parties in the event of such failure, or should the appellee be an

unsuccessful bidder for supplying sand and gravel for the government construction, if undertaken.

It should be observed that the district court expressly found that, because of the uncertainties concerning the governmental projects, the appellee was unwilling to fix any calendar date for taking delivery of sand and gravel under the contract; and, so, it was expressly provided in the contract that appellee would dispose of the material purchased as rapidly as possible, but that no time limit could be set as to its ultimate disposal, that being governed only by demand for the material. The obligations of the parties with respect to the mining and stockpiling by appellants and the purchasing and paying for the material by appellee, upon the terms and conditions of the contract, were found to be firm obligations upon each.

It was found further by the district court that both parties to the contract contemplated that, within one year and sixty days from the date of the contract, the uncertainty concerning the governmental projects would be resolved; that if the projects did not materialize, the disposition of the stockpiled materials could not be made within the agency period of one year and sixty days; and that the time necessary for disposition of these materials by the appellee would not expire with the termination of the agency period.

It further appears from the findings that both parties proceeded to perform their mutual obligations, the appellants in stockpiling and the appellee in making payments as provided in the contract. As of March 31, 1945, there remained to be taken by appellee from the stockpiles of appellants approximately 31,000 tons of gravel and 16,215 tons of sand. On June 19, 1944, appellants notified the appellee of their position that the balance of the contract price was due and payable, with interest after that date, and also that appellee would be required to pay them reasonable compensation for loading and weighing gravel and sand, and for storage of the materials until removed. The appellee promptly denied the rights of appellants, as claimed, and stood firmly on its own interpretation of the contract.

According to the findings, the appellants at all times since the sand and gravel involved in the case were stockpiled have maintained equipment and labor at their plant to load and weigh the same. Upon the failure of the government projects to materialize, the appellee, at a total cost of $48,000, installed a concrete mixer at its Memphis plant, which was put into operation on May 10, 1944. The appellee was thus able to begin selling readymixed concrete which increased the demand for the gravel and sand which it had purchased from appellants.

Among its concluding findings of fact, the district court wrote in its interpretation of the contract which, perhaps, could have more appropriately been deemed conclusions of law. But we consider this informality immaterial. The fact findings upon which the court based its conclusions are clear and unequivocal; and the interpretation which the court placed upon the contract is likewise clear and, in our judgment, sound. These so-called findings declared that: "(XXXI) The language of the contract, the situation of the parties at the time it was made, and the practical interpretation both parties placed thereon while in the course of its performance, all clearly establish that the parties intended to make the market demand, as it from time to time existed, a condition precedent to defendant's obligation so to take and pay for the balance of said materials and definitely fixed the duration of plaintiffs' obligation to store said materials on stockpile and load and weigh the same as disposed of by the defendant. (XXXII) The contract did not fix any calendar date within which the defendant was obligated to pay the remaining fifty percent of the contract price and take delivery of the balance of the materials on the stockpile, but the contract did provide a means and method of determining the obligation of defendant in this respect, by the occurrence of events and conditions not dependent upon the will or diligence of defendant, but determined by extraneous economic conditions, to-wit, the market demand, and the parties, respectively, contracted in contemplation thereof."

The district court found as a fact that the appellee has disposed of the gravel and sand stockpiled by appellants as rapidly as possible, and has not failed to avail itself of any demand therefor; nor has appellee been guilty of any unfaithfulness in the performance of its contract, nor has it breached the same. The fact was found, moreover, that, at the present average daily demand for concrete, gravel and sand, the appellee will be able to dispose of the materials on stockpile within sixteen months from April 1, 1945; or if an anticipated increase in demand eventuates, such dispo-

sition will be made within eight months from such date.

The conclusions of law filed by the court, while sound in principle, are too general in character to be more than a statement of abstract principles. But, as previously indicated, paragraphs XXXI and XXXII of the findings of fact clearly reveal the rationale of the court's adjudication of the rights of the parties in the circumstances disclosed by the record.

The declaratory judgment entered decreed the rights of the parties, as follows: The appellee did not breach the contract of April 20, 1943, and has at all times performed and is now performing all its obligations thereunder. The appellee is obligated to take and pay the balance of the purchase price for the gravel and sand on the stockpile at Olive Branch, Mississippi, as rapidly as the same can be disposed of by appellee, consistent with the demand for the material. At the present average daily demand, the appellee will be able to dispose of all such material on stockpile within sixteen months from April 1, 1945, and will be able to dispose of the same within a shorter period if the anticipated increase in the demand for the materials should develop. Meanwhile, the appellants are obligated under the contract to furnish, without additional cost to appellee, storage, loading and weighing services of such materials in the stockpile.

After giving due consideration to the oral argument and briefs of counsel for the appellants, we find no valid reason for a reversal or modification of the declaratory judgment entered below. Accordingly, the judgment of the district court is affirmed.